UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/29/2016

ANDREW BRACKEN,

                Plaintiff,

v.

MH PILLARS INC. d/b/a PAYZA, OBOPAY, INC. d/b/a OBOPAY, and ULTRALIGHT FS, INC. a/k/a OBOPAY, INC.,

                Defendants.

No. 15-CV-7302 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Andrew Bracken brings this diversity action seeking damages for Defendants' failure to release funds to which he claims he is entitled. Plaintiff was a customer of Defendant MH Pillars Inc. ("Payza"), a provider of payment services that functions similarly to PayPal. Defendants Obopay, Inc. and Ultralight FS, Inc. (collectively, "Obopay" or the "Obopay Defendants") are banks or money transfer services that held and distributed funds for Payza's users. Plaintiff brings claims for fraud, negligent misrepresentation, tortious interference with contract, breach of contract, promissory estoppel, unjust enrichment, conversion, and a violation of Section 349 of the New York General Business Law. Before the Court is Obopay's motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) and (2). Obopay argues that it is not subject to personal jurisdiction in New York and that the Court lacks subject-matter jurisdiction over the case. For the reasons that follow, Obopay's motion is denied without prejudice. While Plaintiff has failed to make a *prima facie* showing of personal jurisdiction over Obopay and the FAC's diversity allegations are deficient, the Court will

allow a limited period of jurisdictional discovery. Obopay is free to renew its motion once jurisdictional discovery has been completed.

## BACKGROUND

Plaintiff is a Colorado citizen who owned and managed a now-dissolved company called Bidxcel, LLC ("Bidxcel"). *See* FAC ¶ 2.[1] In or around the fall of 2012, Plaintiff, through Bidxcel, established an account with Payza to allow Bidxcel's customers to purchase Bidxcel's products online. *Id.* ¶ 7.[2] The account presently has a balance of $38,871.30. *Id.* ¶ 8. According to the FAC, however, the funds in the account are frozen due to a pending investigation by the U.S. Department of Justice. *See id.* ¶ 10. Plaintiff and Bidxcel "made clear to Defendants that the money was required for Plaintiff and/or Bidxcel to remain in business, and subsequently, in order to dissolve and wind down Bidxcel's affairs," *id.* ¶ 9, but Defendants have nevertheless refused to release the funds in Bidxcel's account to Plaintiff, *id.* ¶ 19.

Because Payza apparently lacked the necessary licenses to provide payment services on its own, it relied on Obopay during the relevant period "to distribute [Payza's] funds throughout the United States." *Id.* ¶ 11. In March 2012, Payza entered into an agreement with Obopay whereby Obopay agreed to appoint Payza as its "'authorized delegate' or similar representative under applicable money transmitter, sale of check, bill payment or similar laws in those states in which Obopay maintains Licenses." Robinson Decl. Ex. 1 ("Agent Agreement") § 2.1.[3] The Agent Agreement "provided Payza with the required licensing to operate and provide services to its customers . . . in the United States." FAC ¶ 11. According to the FAC, Obopay "is or was the

---

[1] The facts alleged in the FAC are assumed to be true for purposes of this motion.
[2] The FAC asserts that Bidxcel and Plaintiff entered into a contract with Payza. *See* FAC ¶ 36. The contract was purportedly attached to the FAC as Exhibit A, *see id.*, but no Exhibit A was actually filed, *see* Dkt. 14.
[3] A court is permitted to consider materials outside the pleadings in deciding a motion to dismiss for lack of personal and subject-matter jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (personal jurisdiction); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (subject-matter jurisdiction).

primary bank" holding Payza user funds, including the funds at issue in this action. *Id.* ¶ 4. When Obopay encountered financial difficulties in late 2012, Payza invested in Obopay to ensure that Obopay "continued to provide the necessary licenses for Payza's US operations." *Id.* ¶¶ 12–13.

Obopay eventually terminated its agreement with Payza. *See id.* ¶ 18. Plaintiff alleges that the agreement between Payza and Obopay "was never in compliance with U.S. regulations" and that "Obopay was an illegitimate provider of the banking services Payza sought to perform"— facts that Payza "knew or should have known." *Id.* ¶¶ 14–16. Plaintiff appears to suggest that the freezing of Bidxcel's funds was the result this non-compliance, although the causal relationship is not clearly explained in the FAC. At least as of the date of the FAC, Payza and Obopay purportedly remained under investigation by the Department of Justice. *Id.* ¶ 21. According to the FAC, Obopay has been sanctioned by Kentucky state regulators, and Payza has been "successfully sued" in Canada in connection with claims similar to those brought here by Plaintiff. *Id.* ¶¶ 16, 20.

Plaintiff does not allege that the Obopay Defendants are citizens of New York. In fact, the FAC states that the Obopay Defendants have their primary place of business in California, *id.* ¶ 4, and makes no allegations as to their state of incorporation.[4] According to a former officer of Obopay, the Obopay Defendants "have no direct contacts with New York"; no "offices, employees, agents, inventory, bank accounts or property in New York"; no "New York telephone number or mailing address in New York"; and "do not solicit business in New York." Robinson Decl. ¶¶ 6–9. Obopay, Inc. was licensed to do business in New York at one time, but only until February 2012. *Id.* ¶ 10. Furthermore, "Obopay never had a money transmission license or similar license to operate in New York and never authorized Payza to act in New York." *Id.* ¶ 5; *see also* Agent Agreement App. 1 (noting that Obopay's license in New York was pending).

---

[4] Obopay, Inc. appears to be a Delaware corporation. *See* Agent Agreement Pmbl.

According to the FAC, however, Obopay "transact[s] business within the State of New York," and "any wrongdoing by Obopay occurred in New York through its relationship with Payza." FAC ¶ 5. The FAC alleges that Payza is a U.K. company with a "registered agent" in New York and that Payza is "located" in New York. *Id.* ¶¶ 3, 5; *but see* Agent Agreement Pmbl. (stating that Payza is a New York corporation whose principal place of business is in Montréal). The Agent Agreement between Obopay and Payza provides that "notices, demands and other communications" made pursuant to the Agreement must be delivered to Payza at an address in New York, Agent Agreement § 11.10, but it contains a California choice of law provision, *see id.* § 11.8.

## DISCUSSION

I.   **Personal Jurisdiction**

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-CV-4695 (LTS), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec.*, 722 F.3d at 84 (quotation marks omitted). Pleadings and affidavits should be construed in the light most favorable to the plaintiff, *see id.* at 85, but "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction," *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quotation marks omitted). "In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state . . . so long as the district

4

court's exercise of jurisdiction comports with the requirements of due process." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006); *see also* Fed. R. Civ. P. 4(k)(1)(A).

### A.     General Jurisdiction

Plaintiff asserts that the Obopay Defendants are subject to general jurisdiction in New York, but it is clear that exercising general jurisdiction over the Obopay Defendants based on the allegations in the FAC would violate due process. Under principles of due process, "a corporation may . . . be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic' . . . that it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761–62 (2014)). "Aside from 'an exceptional case' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Id.* (quoting *Daimler*, 134 S. Ct. at 761 & n.19).

According to the FAC, the Obopay Defendants' principal place of business is California. *See* FAC ¶ 4. Plaintiff asserts in his brief that Obopay was incorporated in New York during the relevant time period, *see* Pl.'s Opp. at 3, but this is not alleged in the FAC. Plaintiff must thus demonstrate that this is the sort of exceptional case where a company is at home in a jurisdiction other than its formal place of incorporation or its principal place of business, *see Gucci*, 768 F.3d at 135, which he has not done. As discussed above, the FAC alleges that Obopay "transact[s] business within the State of New York" and that Obopay committed wrongdoing in New York "through its relationship with Payza." FAC ¶ 5. But these sorts of conclusory allegations cannot establish a *prima facie* showing of jurisdiction. *See SPV OSUS*, 114 F. Supp. 3d at 167. Moreover, they do not establish that Obopay is at home in New York. Transacting business in a state does

not make a company at home there. *See Daimler*, 134 S. Ct. at 761 (holding that "continuous and systematic" contacts with a state are not enough to confer general jurisdiction).

### B. Specific Jurisdiction

The FAC also appears to assert that Obopay is subject to specific jurisdiction pursuant to N.Y. C.P.L.R. § 302, New York's long-arm statute. In his opposition to the motion, Plaintiff does not defend the assertion of specific jurisdiction in the FAC, requesting instead that the Court allow jurisdictional discovery so that the record can be more fully developed. *See* Pl.'s Opp. at 4–5. Plaintiff concedes that he "has no idea, outside of the [Agent Agreement], what specifically occurred in what jurisdiction." *Id.* at 5. The Court will nevertheless consider whether it has jurisdiction over Obopay based on the allegations in the FAC and the evidence presented by Obopay. *See, e.g., Moscato v. MDM Grp., Inc.*, No. 05-CV-10313 (KMW), 2008 WL 2971674, at *1 n.1 (S.D.N.Y. July 31, 2008) (considering an unopposed Rule 12(b)(2) motion on the merits). While Plaintiff does not cite any provisions of the New York long-arm statute in the FAC or his brief, several provisions are potentially relevant here. The Court will address each in turn.

#### 1. Section 302(a)(1)

Section 302(a)(1) authorizes the exercise of specific jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state" so long as the cause of action arises from these activities. "A defendant transacts business if he has 'purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Reich v. Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014) (quoting *D.H. Blair & Co.*, 462 F.3d at 104). "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a

substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quotation marks omitted).

Jurisdiction under Section 302(a) can be based on the acts of a non-domiciliary itself, or the acts of its agent. "To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (quotation marks omitted). While a formal agency relationship is not required, the principal must exercise some control over the purported agent. *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001).

Plaintiff has not suggested that Obopay contracted to supply goods or services in New York, and based solely on the Agent Agreement and the allegations in the FAC, the Court cannot identify a single instance of Obopay transacting business in New York.[5] In evaluating whether a non-domiciliary transacts business in New York, courts in this Circuit consider several non-exhaustive factors: (1) "whether the defendant has an ongoing contractual relationship with a New York corporation"; (2) "whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship"; (3) "the existence and contents of any choice of law clause in the contract"; and (4) "whether the contract requires . . . the defendant to send notices or payments into New York or subjects the defendant to supervision by a New York corporation." *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 307 (S.D.N.Y. 2015) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17,

---

[5] The allegation that Obopay "transact[s] business" in New York merely restates the relevant jurisdictional test, and is thus too conclusory to establish a *prima facie* showing of jurisdiction under Section 302(a)(1). *See Virgin Enters. Ltd. v. Virgin Eyes LAC*, No. 08-CV-8564 (LAP), 2009 WL 3241529, at *3 (S.D.N.Y. Sept. 30, 2009).

22 (2d Cir. 2004)). "[N]o one factor is dispositive . . . and the ultimate determination is based on the totality of the circumstances." *Id.* at 310 (quotation marks omitted) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

Applying these factors, the Court cannot conclude that Obopay purposely availed itself of the privilege of conducting activities within New York. The mere fact that Payza appears to have been a New York corporation does not weigh strongly in favor of a finding of jurisdiction, because the Agent Agreement expressly stated that Obopay, Inc. was not licensed in New York and that Payza was therefore not authorized to act on its behalf there. *See* Agent Agreement § 2.1, App. 1; *cf. Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014) ("[T]his factor does not weigh strongly towards a finding that Equate transacted business in New York because . . . the relationship between Equate and CIG concerned CIG's distribution of Equate's products in a foreign market rather than distribution of those products in New York."). Furthermore, the parties chose to have California law govern their contract, Agent Agreement § 11.8, and the record is silent as to where the contract was negotiated or executed, or whether Obopay visited New York for any purpose after the contract was executed. While the Agent Agreement provides that "notices, demands and other communications" made under the Agreement must be sent to Payza at an address in New York, *id.* § 11.10, "courts in this jurisdiction have not found such limited contacts to be sufficient for jurisdiction where they are incident to services performed elsewhere," *Cont'l Indus. Grp.*, 586 F. App'x at 771.

The FAC appears to assert that Payza was Obopay's agent, and as such, Payza's actions are attributable to Obopay for jurisdictional purposes. *See* FAC ¶¶ 5, 11, 16. But Plaintiff has failed to allege any specific acts by Payza that could constitute transacting business in New York or contracting to supply goods or services in New York. The vague allegation that Payza is

"located" in New York, *id.* ¶ 5, does not suffice. *See SPV OSUS*, 114 F. Supp. 3d at 167. Even if Plaintiff had alleged such acts by Payza, nothing in the FAC or the Agent Agreement indicates that Obopay was aware that such acts took place in New York. *See CutCo Indus.*, 806 F.2d at 366 (noting that an "alleged agent must have acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal" (quotation marks omitted)). To the contrary, Obopay expressly withheld authorization for Payza to serve as Obopay's delegate in New York. *See* Agent Agreement § 2.1, App. 1. There is thus no basis for exercising jurisdiction over Obopay under Section 302(a)(1) on the record presently before the Court.

### 2. Section 302(a)(2) and (3)

Sections 302(a)(2) and (3) concern tortious conduct. Section 302(a)(2) extends jurisdiction to claims that arise from the commission of tortious acts within New York. Section 302(a)(3) extends jurisdiction to claims that arise from the commission of tortious acts outside of New York that cause injury within New York if the defendant either (1) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (2) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Both provisions require a clear nexus to New York. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997) (noting that Section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act."); *Bank Brussels Lambert*, 171 F.3d at 791 ("[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (2d Dep't 1987))).

To the extent that Plaintiff intends to invoke these provisions as a basis for exercising jurisdiction over Obopay, he presumably seeks to do so on an agency theory, as he has not alleged that Obopay directly committed tortious conduct in New York or caused an injury there. But the agency theory lacks merit in this context as well. The only allegation suggesting that Payza committed tortious conduct or caused an injury in New York is the allegation that Payza is "located" in New York. *See* FAC ¶ 5. This allegation is simply too vague to serve as a basis for specific jurisdiction. *See SPV OSUS*, 114 F. Supp. 3d at 167; *cf. Hood v. Ascent Med. Corp.*, No. 13-CV-628 (RWS), 2016 WL 3453656, at *3 (S.D.N.Y. June 20, 2016) ("[C]onclusory allegations that torts were committed in New York . . . without more, cannot be the basis for specific personal jurisdiction under C.P.L.R. § 302(a)(2) or § 302(a)(3)."). Sections 302(a)(2) and (3) thus do not provide a basis for exercising jurisdiction over the Obopay Defendants.[6]

### C. Jurisdictional Discovery

Even where a plaintiff has failed to make a *prima facie* showing of personal jurisdiction, a court may allow for jurisdictional discovery. *See Int'l Diamond Imps., Inc. v. Med Art, Inc.*, No. 15-CV-4045 (KMW), 2016 WL 1717217, at *2 (S.D.N.Y. Apr. 27, 2016) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003) (per curiam); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007)). "At the jurisdictional stage, district courts enjoy broad discretion in deciding whether to order discovery." *Reich*, 38 F. Supp. 3d at 459 (quotation marks omitted). Before allowing jurisdictional discovery, courts look for "a threshold showing that there is some basis for the assertion of jurisdiction." *Int'l Diamond Imps.*, 2016 WL 1717217, at *2 (quotation marks omitted). "[M]ere speculations or hopes" are not enough. *Reich*, 38 F. Supp. 3d at 459 (quotation marks omitted).

---

[6] There is nothing in the FAC to suggest that Section 302(a)(4), which applies to claims arising out of a defendant's ownership, use, or possession of real property in New York, is applicable to this case.

Although a close question, the Court will permit limited jurisdictional discovery in this case. For the reasons discussed, the likelihood of establishing general jurisdiction over Obopay is low. But Plaintiff's allegations of specific jurisdiction have more promise. Given that Payza appears to be located or incorporated in New York and maintained a New York address, there is a reasonable possibility that relevant conduct did occur in New York, some of which may be sufficient to confer jurisdiction over the Obopay Defendants. The Court will thus permit a limited amount of jurisdictional discovery to explore this possibility.

## II.   Subject-Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. The FAC asserts that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. *See* FAC ¶ 6. Under 28 U.S.C. § 1332, a federal court may exercise jurisdiction over an action where (1) complete diversity exists between the parties, and (2) the amount in controversy exceeds $75,000. A complaint must include "adequate allegations to show that the district court has subject matter jurisdiction." *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (citing Fed. R. Civ. P. 8(a)(1)).

Complete diversity requires "that each plaintiff's citizenship must be different from the citizenship of each defendant." *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). Plaintiff has failed to allege the citizenship of each of the defendants in this action. The FAC alleges that Payza is a U.K. company that has a "registered agent" and is "located" in New York, and that the Obopay Defendants have their "primary place of business . . . in California." FAC ¶¶ 3–5; *but see* Agent Agreement Pmbl. (describing Payza as a New York corporation with a principal place of business in Montréal). These are not sufficient allegations of citizenship for purposes of 28 U.S.C.

§ 1332(c). *See Durant*, 565 F.3d at 59 (noting that "for purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business"). But a pleading failure such as this "does not always require that the action be dismissed, for the actual *existence* of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements." *Id.* at 64 (quotation marks omitted). The Court will thus allow Plaintiff to amend the FAC after the close of jurisdictional discovery to ensure that the citizenship of each party is properly alleged. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 329 (2d Cir. 2001) ("[W]here the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may simply allow a complaint to be amended to assert those necessary facts and then treat diversity jurisdiction as having existed from the beginning.").

Obopay also contends that the FAC fails to satisfy the amount-in-controversy requirement. *See* Obopay's Mem. at 9–10. Plaintiff concedes that the economic damages in this case only amount to about $40,000, but he argues that the "non-economic damages and/or punitive damages" that he seeks push the amount-in-controversy over the jurisdictional threshold. *See* Pl.'s Opp. at 5–6. While these types of damages may be included in determining whether the jurisdictional amount is satisfied, *see In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 2130904, at *2–3 (S.D.N.Y. May 6, 2015), whether Plaintiff has a viable claim for such damages will depend on which jurisdiction's law applies, *see, e.g., A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) (observing that a demand for punitive damages "may be included in determining whether the jurisdictional amount is satisfied" "*if punitive damages are permitted under the controlling law*" (emphasis added)). By Plaintiff's own admission, he "has no idea, outside of the [Agent Agreement], what specifically occurred in what jurisdiction." Pl.'s

Opp. at 5. The Court can complete a more informed choice-of-law analysis once the parties have conducted jurisdictional discovery and Plaintiff has had an opportunity to amend the FAC.

## CONCLUSION

Obopay's motion is denied without prejudice. A conference is hereby scheduled for January 19, 2017 at 11:00 a.m. to discuss the scope and timing of jurisdictional discovery.

SO ORDERED.

Dated:   December 29, 2016
         New York, New York

_____
Ronnie Abrams
United States District Judge